# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GLADYS SHELVY, | ) |
|       Plaintiff, | ) No. 11 CV 9176 |
| v. | ) Magistrate Judge Young B. Kim |
| WAL-MART STORES, EAST, L.P., | ) |
|       Defendant. | ) |
| WAL-MART STORES, EAST, L.P., | ) |
|       Third-Party Plaintiff, | ) |
| v. | ) |
| U.S. XPRESS ENTERPRISES, INC., a Nevada Corporation, | ) |
|       Third-Party Defendant. | ) November 19, 2013 |

## MEMORANDUM OPINION and ORDER

Plaintiff Gladys Shelvy brought this personal injury case in November 2011 alleging that Wal-Mart Stores, East, L.P. ("Wal-Mart") was negligent and failed to use reasonable care when loading a trailer that she later hauled to Cedar Rapids, Iowa. Plaintiff hired the Nemeroff Law Offices ("Nemeroff") to prosecute her case. But about two years into the case in August 2013 Plaintiff discharged Nemeroff and hired a different law firm, Cogan & Power, P.C. ("Cogan"), to represent her instead. When Cogan requested the client file, Nemeroff refused to comply unless Plaintiff first paid its fees or posted adequate security for the fees owed. Before the court is

Plaintiff's motion to compel Nemeroff to turn over her file to Cogan. For the following reasons the motion is denied without prejudice:

## Facts

Plaintiff worked as a truck driver for U.S. Xpress Trucking ("USX"). (R. 83, Second Am. Compl. ¶ 7.) In November 2009, a sealed trailer loaded with Wal-Mart merchandise was delivered to USX and was hitched to Plaintiff's tractor-trailer for continued transport to a Wal-Mart store in Cedar Rapids, Iowa. (Id. at ¶¶ 4–8.) Upon Plaintiff's arrival at the Wal-Mart store in Cedar Rapids, a store manager broke the seal of the trailer. (Id. at ¶ 9.) When Plaintiff opened the door of the trailer, boxes came falling out of the trailer striking Plaintiff and injuring her. (Id. at ¶¶ 9–11.)

In July 2011, Plaintiff hired Nemeroff to represent her on a contingency fee basis in this personal injury case against Wal-Mart. (R.133, Nemeroff's Resp. at 1.) In November 2011, Nemeroff filed a complaint on behalf of Plaintiff in state court. (R.1, Ex. A., Compl.) The following month, Wal-Mart removed the case to this court. (R. 1.) About two years into this litigation and after the close of fact discovery, in August 2013, Plaintiff discharged Nemeroff as her attorneys. (R. 123, Pl.'s Mot., Ex. A.) Plaintiff then hired Cogan to continue the prosecution of this case. (R. 123, Pl.'s Mot. at 1.) The court is not aware of the reasons for the change in attorneys and the parties did not offer any in connection with this motion. Importantly, Plaintiff has not suggested that Nemeroff had engaged in unprofessional conduct. After Plaintiff retained Cogan, her new attorneys made several requests upon Nemeroff to turn

over Plaintiff's file. (Id.) Nemeroff asserted a retaining lien and refused to produce the file until Plaintiff either paid its attorney's fees or posted security for the payment of those fees. (R.133, Nemeroff's Resp. at 2.) Meanwhile, this case has come to a grinding halt and has not progressed since Cogan appeared in the case three months ago on August 14, 2013.

In September 2013, Plaintiff moved to compel Nemeroff to turn over her file to Cogan. (R. 123.) Subsequently, in October 2013, Plaintiff served a subpoena on Nemeroff for her file, presumably in response to concerns expressed about the court's jurisdiction over Nemeroff. (R. 125, 126.) Nemeroff opposes the motion and continues to assert a retaining lien on the file until its fees and expenses are paid or adequate security is posted. (R. 133, Nemeroff's Resp. at 2.) Nemeroff explains that it has expended a considerable amount of time and effort prosecuting this case and has incurred approximately $2,000 in out-of-pocket expenses. (Id.)

## Analysis

Under Illinois law, a client may discharge her attorney at any time with or without cause. *Rhoades v. Norfolk & Western Ry.*, 78 Ill.2d 217, 399 N.E.2d 969, 974 (1979). When a client fires an attorney working on a contingency fee basis before a settlement or a verdict is reached, the contingency fee agreement also terminates. *In re Estate of Callahan*, 144 Ill.2d 32, 578 N.E.2d 985, 988 (1991). As such, the discharged attorney's right to compensation for his services is controlled by the doctrine of *quantum meruit*. *Anderson v. Anchor Org. for Health Maint.*, 274 Ill. App. 3d 1001, 654 N.E.2d 675, 681 (1st Dist. 1995).

The *quantum meruit* doctrine allows a terminated attorney to recover the reasonable value of the services rendered to a client prior to his discharge. *Rhoades*, 399 N.E.2d at 974. The theory behind this rule is based on the implied promise of a recipient of services to pay for those services that are of value to her. *Callahan*, 578 N.E.2d at 988. Otherwise, the client would be unjustly enriched by the value of the discharged attorney's unpaid services. *Id.*; *Kannewurf v. Johns*, 260 Ill. App. 3d 66, 632 N.E.2d 711, 715 (5th Dist. 1994) ("[T]he discharged attorney is entitled to receive the reasonable value of the services provided to the client, so that the client will not be unjustly enriched by the value of the attorney's unpaid, but reasonable, services."). In assessing reasonable attorney's fees under the doctrine of *quantum meruit*, the following factors are to be considered by the trial court: "the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the clients." *Kannewurf*, 632 N.E.2d at 717; *see also Lee v. Ingalls Mem'l Hosp.*, 232 Ill. App. 3d 475, 597 N.E.2d 747, 776 (1st Dist. 1992).

The question of whether an attorney can recover fees for services rendered to a former client before the adjudication or settlement of the former client's lawsuit was a matter of first impression for the Illinois Supreme Court in *Callahan*. 578 N.E.2d at 987. The *Callahan* court acknowledged that some states have held that an attorney cannot recover his fees until a judgment is reached, but adopted the

4

contract approach the State of New York followed in *In re Tillman*, 259 N.Y. 133, 181 N.E. 75 (1932), and held that an attorney's rights to recover compensation accrues immediately after discharge, *Callahan*, 578 N.E.2d at 987-88. The *Callahan* court reasoned that the condition precedent—an attorney is only to be paid for his services if he wins—no longer exists when the attorney is fired. *Id.* at 988. Also, the fired attorney's right to his fees cannot be measured by the degree of the second attorney's success. *Id.* As such, there is no basis to force the fired attorney to wait for the results of the lawsuit from which he was removed. *Id.*

Based on this entitlement to *quantum meruit* compensation, a discharged attorney originally retained on a contingency fee agreement may invoke a "retaining lien" on the client file in order to secure the payment of his fees. Illinois common law has long recognized an attorney's right to assert a retaining lien, which is a possessory lien. *Twin Sewer and Water, Inc. v. Midwest Bank and Trust Co.*, 308 Ill. App. 3d 662, 720 N.E.2d 636, 640 (1st Dist. 1999). A retaining lien allows an attorney to retain papers and property of a client until his fees are paid or the client posts a security for payment. *Carrizales v. Board of Educ. of Rockford Sch. Dist., No. 205*, No. 03 CV 50459, 2004 WL 2385028, at *1 (N.D. Ill. Oct. 22, 2004). It is a passive lien that can only be enforced when the former client initiates a proceeding to compel the production of her client file. *Twin Sewer*, 720 N.E.2d at 675. Although federal common law does not recognize a retaining lien, the general rule is that the federal courts will apply the statutory and common law of the state in which the court sits. *Lucky-Goldstar Int'l, Inc., v. International Mfg. Sales Co.*,

5

*Inc.*, 636 F. Supp. 1059, 1062 (N.D. Ill. 1986); *Riva Techs. Inc. v. Zack Elecs., Inc.* No. 01 CV 1390, 2002 WL 368520, at *7 (N.D. Ill. March 7, 2002) ("[F]ederal courts are to apply the common law attorney's retaining lien of the state in which the court sits.").

The common law retaining lien was first recognized in Illinois in *Sanders v. Seelye*, 128 Ill. 631, 21 N.E. 601, 603 (1889). The Illinois Supreme Court held in that case that an attorney may legally maintain such a lien and that the lien exists on all client documents placed in the attorney's hands in the course of his service. *Id.* at 602-03. Trial courts cannot ignore this lien and force a discharged attorney to turn over the papers of his former client unless the attorney pursues a direct action against the client for fees. *Ross v. Wells,* 6 Ill. App. 2d 304, 127 N.E.2d 519 (1st Dist. 1955). In *Ross*, the appellate court reasoned that "[t]here is logic in the rule that a lawyer should be protected in his retaining lien until he is paid, and should not be compelled to produce . . . records and papers upon which he has such lien in any proceeding other than a suit by the attorney to recover his fees." *Id.* at 520.

The issue of retaining liens remained dormant in Illinois until *Upgrade Corp. v. Michigan Carton Co.*, 87 Ill. App. 3d 662, 410 N.E.2d 159 (1st Dist. 1980), when an attorney asserted his right to a retaining lien as a defense to his former client's motion to compel the surrender of the client file. 410 N.E.2d at 161. The *Upgrade* court recognized that under certain circumstances, retaining liens should not be enforced in the interest of equity and fairness. *Id.* Even so, the court held in *Upgrade* that the discharged attorney should not be forced to turn over client

documents until the value of his services has been determined and he is either compensated or given adequate security for his compensation. *Id.* at 162.

The court in *Lucky-Goldstar* reached a similar result. The challenge for the court in that case was to resolve the inherent conflict between an attorney's right to invoke a retaining lien and his professional obligations to the former client; whether the former attorneys for the defendant company were ethically justified in invoking a retention lien. 636 F. Supp. at 1062. Relying on an informal opinion of the ABA Standing Committee on Ethics and Professional Responsibility ("ABA Committee"), the *Lucky-Goldstar* court ruled that the right of an attorney to invoke a retention lien is not absolute and that other factors must be considered to determine whether an attorney is *ethically* entitled to invoke the lien. The court considered the following factors: (1) whether the former client has the financial ability to pay the fees; (2) whether the fee was clearly agreed upon and the former client clearly understood and agreed to pay; and (3) whether the enforcement of the retaining lien would harm the important rights or interests of the former client or the public. *Id.* at 1063-64. Based on these factors, the court sided with the former attorneys because the defendant company did not assert that it was unable to pay the fees claimed, that it did not agree to pay the fees, that it was unaware of its obligation to pay the fees, or that the enforcement of the lien would result in the deprivation of its important rights. Following the approach taken in *Upgrade*, the *Lucky-Goldstar* court also required the defendant company to post security to satisfy the fees before the former attorneys had to turn over the file. *Id.* at 1065.

The *Riva* court also concluded that a discharged attorney's ethical obligations to his former client did not trump his right to assert a retention lien. 2002 WL 368520 at *5. As in *Lucky-Goldstar,* the court in *Riva* looked to the factors identified by the ABA Committee and ruled that the former attorney was entitled to invoke the retention lien and that the former client must either pay the fees or post adequate security before the attorney could be required to turn over the file. *Id.* at *7. However, the court in *Carrizales* reached a different conclusion, ordering the former attorney to turn over all documents "necessary for the client to pursue her cause of action," because the former client was viewed as an unsophisticated litigator who "is far from well-healed." 2004 WL 2385028 at *3; *see also Hunt v. Northwest Suburban Cmty. Hosp. Inc.,* No. 03 CV 50250, 2009 WL 928933, at *4 (N.D. Ill. April 3, 2009) (refusing to honor a retention lien because the interest of the former client outweighed the interest of the attorney).

Applying the prevailing principles under Illinois law to the facts of this case, the court first finds that Nemeroff is entitled to *quantum meruit* compensation for the reasonable value of services rendered on behalf of Plaintiff and it is entitled to this compensation now. Nemeroff explains in its response to the motion that it has expended a considerable amount of time engaging "in extensive discovery, including participating in approximately nine depositions, with some taking place in Iowa, and incurred approximately $2,000 in out-of-pocket expenses." (R. 133, Nemeroff's Resp. at 2.)

Second, this court finds that there are no special factors diminishing Nemeroff's right to invoke a retention lien. Plaintiff's main contention in favor of compelling Nemeroff to turn over the file is that Nemeroff's obstructive behavior is delaying the processing of this case in violation of Rule 1.16(d) of the Rules of Professional Conduct. (R. 123, Pl.'s Mot. at 2-3.) But this ethical obligation by itself is not enough to quash Nemeroff's long recognized property right under Illinois law. This court agrees with *Lucky-Goldstar* and *Riva* that the former attorney's professional responsibility to his former client cannot be given priority over his right to invoke a retention lien. If it did, the common law right to a retention lien in Illinois would be worthless.

The court also agrees that the right to assert a retention lien is not absolute and that it must yield under certain circumstances. However, Plaintiff has not submitted any information or evidence tending to show that any of the ABA Committee factors discussed in *Lucky-Goldstar* and *Riva* weigh in favor of setting aside the retention lien and compelling Nemeroff to turn over the client file. In contrast, there is no dispute that Nemeroff is entitled to recover its *quantum meruit* fees, which attached back in August 2013, and that Plaintiff has not paid these fees or posted adequate security for these fees. Under these circumstances, Nemeroff is ethically entitled to assert a retention lien.

As noted in *Lucky-Goldstar*, this court also has a legitimate interest in moving this 2011 case forward as quickly as possible. The matter has been static since August 2013. The parties in this case must still complete expert discovery to

close out all discovery and proceed to the dispositive motion phase. So the challenge for this court is to figure out a way to honor Nemeroff's right to assert a retention lien and at the same time allow Plaintiff access to her file so that she may continue to prosecute this case. Nemeroff provides a workable solution to this problem in its response to the motion: (1) Cogan reimburses Nemeroff the out-of-pocket expenses; and (2) Plaintiff grants Nemeroff the right to recover its fees from any proceeds recovered in this case before other liens are paid, including Cogan's contingency fees. The court finds this suggestion to be reasonable under the circumstances of this case. Had Cogan been retained from the start, it likely would have incurred about the same out-of-pocket expenses Nemeroff has incurred. Also, because Nemeroff's right to its fees attached back in August 2013 and because Cogan will not have to expend time on fact discovery, it makes sense that Nemeroff is compensated before others. The court will explore this suggestion further with the parties, including the Third-Party Defendant USX, at the next status hearing and also discuss ways to adjudicate Nemeroff's lien as soon as possible.

## Conclusion

For the foregoing reasons, Plaintiff's motion to compel the Nemeroff Law Offices to turn over her case file to her newly retained attorneys is denied without prejudice.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**