UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLADYS SHELVY, | ) |
| | ) No. 11 CV 9176 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| WAL-MART STORES, EAST, L.P., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| WAL-MART STORES, EAST, L.P., | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. XPRESS ENTERPRISES, INC., | ) |
| a Nevada Corporation, | ) |
| | ) August 7, 2014 |
| Third-Party Defendant. | ) |

MEMORANDUM OPINION and ORDER

Before the court is the motion of Defendant Wal-Mart Stores East, L.P. ("Wal-Mart") requesting an order compelling Plaintiff Gladys Shelvy to authorize the production of her employment records from the United States Postal Service ("USPS"). For the following reasons the motion is granted in part and denied in part:

Shelvy alleges that in November 2009, Wal-Mart was negligent because its employees failed to adequately secure a trailer loaded with merchandise and that she suffered injuries when boxes fell out of the truck and hit her. (See R. 1-1,

Compl.) In her answers to Wal-Mart's interrogatories, Shelvy disclosed information about injuries she suffered prior to the 2009 incident. Specifically, she answered that in addition to being in car accidents in 1982, 1991, and 1999, she was also injured in 1993 while working for USPS. (R. 154-1, Def.'s Mot., Ex. A at 3.) According to Shelvy, a door on a "bar code machine" fell off its hinges and struck her back. (Id.) Shelvy said that USPS sent her to a medical clinic, but she could not recall the name or location of the facility. (Id.)

At the July 1, 2014 status hearing, Wal-Mart reported that it was seeking to obtain a copy of Shelvy's personnel file from USPS. (R. 153.) Shelvy, proceeding *pro se*, responded that she did not oppose the release of medical records but objected to the release of her entire personnel file on the basis of relevance. (Id.) In the instant motion, Wal-Mart requests that this court order Shelvy to execute a release authorizing the production of her USPS personnel file. (R. 154, Def.'s Mot.) Shelvy timely filed her response on July 31, 2014. (R. 159, Pl.'s Resp.)

According to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Discovery requests are relevant if there is a possibility that the information sought may be relevant to the subject matter of the action. *Clark v. Ruck*, No. 13 CV 3747, 2014 WL 1477925, at *2 (N.D. Ill. Apr. 15, 2014) (citations omitted). Information sought "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to limit a request for the discovery of personnel files in order to prevent the dissemination of employees' personal or confidential information. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Courts are instructed to consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it" and taking into account society's interest in furthering "the truth-seeking function" in each particular case. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (citation omitted).

Wal-Mart argues that Shelvy's personnel file is relevant because it "may contain information concerning [Shelvy's] physical and mental condition and information concerning prior injuries and her credibility[.]" (R. 154, Def.'s Mot. ¶ 21.) The court finds that information about Shelvy's pre-existing injuries is relevant to causation and damages in this case. *See Newman v. McNeil Consumer Healthcare*, No. 10 CV 1541, 2013 WL 4460011, at *2 (N.D. Ill. Mar. 29, 2013) ("Evidence of a possible alternative cause to an injury is relevant if it has any tendency to make the existence of any fact of consequence more or less probable."). Wal-Mart is entitled to discover evidence which might support its argument that Shelvy's current injuries were caused by her prior accidents, not by Wal-Mart's actions. *See id.*, 2013 WL 4460011, at *2. Also, if Shelvy's personnel file shows where she was treated after the 1993 accident, such information could lead to the discovery of additional medical records which Wal-Mart could then use to determine the nature and extent of her 1993 injuries.

Wal-Mart would still have to show a causal connection between Shelvy's prior accidents and the present injury to introduce pre-accident medical records as substantive evidence. *See Taylor v. Nat'l R.R. Passenger Corp.*, 920 F.2d 1372, 1376 (7th Cir. 1990). This may be a difficult task given that 16 years elapsed between Shelvy's USPS injury and the 2009 incident at issue here. But relevant evidence need not be admissible in order for it to be discoverable. Fed. R. Civ. P. 26(b)(1). Furthermore, authorizing the release of medical records in Shelvy's USPS employment records imposes a minimal burden on Shelvy given that USPS possesses the records. Accordingly, the court finds that medical records related to Shelvy's on-the-job-injuries, including the 1993 injury, in her USPS personnel file is discoverable.[1]

While Shelvy's personnel file may include relevant medical information, the non-medical portions of her file are not relevant to the issues in this case. Wal-Mart argues that personnel files are discoverable as a general matter, relying on *Vodak v. City of Chi.*, No. 03 CV 2463, 2004 WL 1381043, at *5 (N.D. Ill. May 10, 2004), and *Smith v. Sharp*, No. 11 CV 50382, 2013 WL 2298142, at *3 (N.D. Ill. May 24, 2013). (R. 154, Def.'s Mot. ¶ 19.) Wal-Mart's reliance on those cases is misplaced, however, because both *Vodak* and *Smith* involved Section 1983 claims alleging officer misconduct. The *Vodak* and *Smith* courts found that personnel records were relevant to the plaintiff's policy and practice allegations, as well as for showing the

---

[1] Shelvy provided a signed authorization form releasing all "personnel psychiatric records only" to Wal-Mart as a "good faith measure." (See R. 159, Pl.'s Resp. ¶ 29 & Ex. 3.) This court therefore finds that Wal-Mart's motion as it pertains to any mental health records is moot.

4

defendant officers' involvement in the events at issue. *See Vodak*, 2004 WL 1381043, at *5; *Smith*, 2013 WL 2298142, at *3. Courts have also found personnel records to be relevant in discrimination cases because they have a direct bearing on the contested issues. *See, e.g., Brunker v. Schwan's Home Serv.*, 583 F.3d 1004, 1007 n.1 (7th Cir. 2009) (finding personnel files relevant in a discrimination suit because the "true reason behind the [adverse] action is the very heart of the case"); *Lee v. Chi. Youth Ctrs.*, No. 12 CV 9245, 2014 WL 2618537, at *6 (N.D. Ill. June 10, 2014) (holding personnel records are discoverable in discrimination cases). But this case involves neither officer misconduct nor discrimination, and Wal-Mart is incorrect to presume that Shelvy's personnel file is automatically discoverable.

Wal-Mart attempts to draw a connection between the non-medical information in Shelvy's personnel file and the issues in this case by arguing that such information is relevant to her employability. (See R. 154, Def.'s Mot. ¶ 16.) Specifically, Wal-Mart contends that it is entitled to review Shelvy's work attendance history and disciplinary actions in order to assess her future job prospects. (Id. ¶ 23.) This court disagrees. Shelvy testified that she left USPS in 1997 or 1998. (R. 154-2, Def.'s Mot., Ex. B at 26:9-12.) Wal-Mart fails to show how her past work performance at USPS sheds any light on her future employability when it has been more than 16 years since she last worked there. There is no indication that potential future employers would consider, or even have access to, this personnel file in deciding whether to hire her.

5

Furthermore, Wal-Mart cites no authority to support its assertion that Shelvy's entire personnel file is necessary for a vocational rehabilitation expert to render an opinion on her future employability. (See id. ¶ 26.) Vocational experts generally opine on the range of jobs available to someone with certain physical or mental restrictions and limitations. *See Frost v. Teco Barge Line, Inc.*, No. 04 CV 752, 2007 WL 518634, at *2 (S.D. Ill. Feb. 15, 2007). Such an expert is entitled to consider, among other things, the physical limitations placed on Shelvy by her doctors, functional capacity evaluations, and information gleaned from interviews with her. *See, e.g., Quirin v. Wingfoot Commer. Tire Sys., LLC*, No. 04 CV 2187, 2006 WL 1084396, at *5 (C.D. Ill. Apr. 21, 2006); *Acosta v. Tenneco Oil Co.*, 913 F.2d 205, 207 (5th Cir. 1990). But Wal-Mart fails to explain why a vocational expert would need to review Shelvy's attendance history or disciplinary actions that date back more than 16 years. Shelvy's medical records should provide the data the expert needs to render an opinion.

Wal-Mart also argues that Shelvy's personnel file is relevant to her claim for lost wages. (See R. 154, Def.'s Mot. ¶ 16.) Again, this court disagrees. Shelvy was employed by Third-Party Defendant U.S. Xpress Enterprises, Inc. at the time of the 2009 accident, and as Wal-Mart acknowledges, she is claiming lost wages from her job at U.S. Xpress, not USPS. (See id. ¶ 23.) Shelvy's work at USPS has no impact on her claim for wages she would have earned at U.S. Xpress. Indeed, personnel files from her post-2009 employers and her file from U.S. Xpress—which Shelvy

6

notes has already been produced—are far more relevant to determining her earnings before and after the 2009 accident. (See R. 159, Pl.'s Resp. ¶¶ 12-13, 19.)

Wal-Mart next points to Shelvy's May 2013 deposition in which she testified that she left USPS because she "didn't like it anymore." (R. 154-2, Def.'s Mot., Ex. B at 26:15-18.) She said that she "took a constructive discharge," explaining that she tried to leave "while things [were] still okay" and "before on a favorable [sic] decision." (Id. at 26:20-24.) She then testified that she quit her job and was not fired. (Id. at 27:1-6.) Wal-Mart argues that her testimony "implies something was amiss" and is "tantalizing in its ambiguity," speculating that Shelvy may have left USPS before management could fire her. (R. 154, Def.'s Mot. ¶ 25.) But as Shelvy correctly points out, whether she disliked, quit, or was fired from her previous job at USPS is irrelevant. (R. 159, Pl.'s Resp. ¶ 11.) Unfortunately for Wal-Mart, intrigue does not equal relevance, and it is unclear how Shelvy's departure from USPS has anything to do with her claim for lost wages or her capacity to perform other work in the future.

Nor is this court persuaded that Wal-Mart should gain access to Shelvy's entire personnel file because it is relevant to her credibility. This court will not permit Wal-Mart to embark on a fishing expedition based on vague suspicions about the "real" reasons why Shelvy left USPS because Wal-Mart has not shown how such information is relevant. *See* Fed. R. Civ. P. 26(b)(1). Furthermore, seeking to obtain Shelvy's employment records for the sole purpose of impeaching her credibility is not reasonably calculated to lead to the discovery of admissible

evidence. *See id.* A witness may not be impeached by contradiction as to collateral or irrelevant matters elicited on cross-examination. *See Calhoun v. Ramsey*, 408 F.3d 375, 382 (7th Cir. 2005) (citations omitted). A matter is collateral if the impeaching fact could not have been introduced into evidence for any purpose other than to show the contradiction. *Id.*; *United States v. Kozinski*, 16 F.3d 795, 806 (7th Cir. 1994) ("[O]ne may not contradict for the sake of contradiction; the evidence must have an independent purpose and an independent ground for admission."). Because Wal-Mart has not shown that non-medical portions of Shelvy's USPS personnel file are relevant, it is not entitled to discover them.

## Conclusion

For the foregoing reasons, Wal-Mart's motion to compel is granted in part and denied in part. The motion is granted to the extent that Shelvy is ordered to execute a release authorizing the production of all medical records related to her on-the-job-injuries, including her 1993 injury and all mental health records, contained in her USPS employment records. The motion is denied as to the remainder of Shelvy's USPS employment records.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

8