RJG/MGP                                                                                   5766-26000

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GLADYS SHELVY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No.    11 cv 9176 |
| ) | |
| WAL-MART STORES, INC., ) | |
| a foreign corporation, ) | Magistrate Young B. Kim |
| ) | |
| Defendant. ) | |
| ) | |
| ———————————————— ) | |
| WAL-MART STORES EAST, LP, ) | |
| Incorrectly sued as Wal-Mart Stores, Inc., ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| U.S. XPRESS, INC., ) | |
| a Nevada corporation, ) | |
| ) | |
| Third-Party Defendant. ) | |
| ) | |
| ———————————————— ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

NOW COMES Defendant, WAL-MART STORES EAST, LP, incorrectly sued as WAL-MART STORES, INC. (hereinafter "WALMART"), by its attorneys, Robert J. Golden, Michael G. Patrizio and Dowd & Dowd, Ltd., and herein move this Court for Summary Judgment, pursuant to Fed. R. Civ. P. 56, as to the Second Amended Complaint filed by Plaintiff GLADYS SHELVY (hereinafter "SHELVY"). In support thereof, Defendant states as follows:

1

## SUMMARY OF THE ARGUMENT

Plaintiff alleges she was injured because a trailer was improperly loaded such that a dozen boxes of merchandise fell on her when she opened the doors. The mere fact some boxes fell out of the trailer does not mean the trailer was improperly loaded. Rather, it was Plaintiff's own negligence – in opening both doors rather than only one and using it as a shield -- and her failure to follow standard procedure among truck drivers that caused her injuries. Thus, Defendant is entitled to Summary Judgment as to Count I of the Second Amended Complaint because there is no material fact to establish Defendant's negligence.

Defendant also is entitled to Summary Judgment on Count II, which alleges spoilation of evidence. Defendant had no duty to preserve the evidence when it did not anticipate a claim would be made. Moreover, the video recording that is the subject of this Count was erased weeks after the incident, in the normal course of business, and, even if it still existed, would not have shown the incident because of the camera angle. The recording thus is irrelevant to Plaintiff's case, and Plaintiff is not prevented from proving her case in its absence.

### I. STATEMENT OF UNCONTESTED MATERIAL FACTS

#### A. The Parties

1. Plaintiff GLADYS SHELVY is a citizen of State of Illinois who filed a complaint against Defendant for bodily injury arising from an accident that occurred on November 21, 2009. A copy of the Answer to the Second Amended Complaint is attached as Exhibit A.

2. Defendant WALMART is a citizen of the State of Arkansas, being an Arkansas corporation and having its principal place of business in the State of Arkansas.

3. Third-Party Defendant U.S. XPRESS, INC. (hereinafter "USX"), is a citizen of Nevada, being a Nevada corporation, and a citizen of the Tennessee, having its principal place in Chattanooga.

### B. Jurisdiction and Venue

4. This Court has subject matter jurisdiction pursuant to the diversity statute, 28 U.S.C. 1441, because the citizenship of the parties is diverse and the amount in controversy meets the minimal jurisdictional requirements, 28 U.S.C. 1332.[1]

### C. Facts Common to All Allegations

5. On or about November 11, 2009, WALMART employees loaded a trailer, No. 800272, with merchandise at a WALMART distribution center located in Elwood, Peoria County, Illinois. (Chas. Swayne deposition, Exhibit B, p. 26.)

6. WALMART employees sealed trailer No. 800272 at the WALMART distribution center in Elwood, Illinois. (Id., p. 40.)

7. On November 16, 2009, Houston Taylor, a truck driver employed by USX, drove the trailer from the WALMART distribution center to a USX lot located in Markham, Illinois. (Houston Taylor deposition, Exhibit C, p. 62.)

8. Taylor left the trailer at the Markham lot, where it remained under the control of USX. (Id., pp. 66-67.)

---

[1] On November 18, 2011, SHELVY filed a complaint in the Circuit Court of Cook County. WALMART removed the lawsuit on December 27, 2011. After removal, WALMART filed an answer denying all material allegations and an Affirmative Defense alleging contributory negligence by Plaintiff. (Exhibit A.) WALMART also filed a Third-Party Complaint for Contribution against USX.

9. Between November 16, 2009, and November 21, 2009, trailer No. 800272 was attached to a power unit owned by USX, and which was operated by its employee, Plaintiff SHELVY. (Exhibit A.)

10. SHELVY drove the sealed trailer from the USX lot in Markham, Illinois, to a Walmart store in Cedar Rapids, Iowa. (Exhibit A.)

11. When she arrived, Walmart Assistant Manager David Schroeder reviewed the paperwork, and either he or Plaintiff broke the seal on the trailer. (David Schroeder deposition, Exhibit D, p. 42.)

12. Schroeder told SHELVY to "drop" the trailer at the general merchandise side of the loading dock. (Id., p. 43.)

13. When SHELVY opened the trailer, approximately ten boxes of merchandise fell out of the trailer and struck her on her head and shoulders. (Id., p. 57.)

14. SHELVY completed an incident report in which she stated she opened both doors of the trailer. (Exhibit E.) In that report, she wrote: "Opened trailer doors." She checked "no" for the question: "Were There Any Physical Signs of an Injury. (Exhibit E.)

15. After the incident, SHELVY completed her delivery and continued to work the following week, completing all of her delivery assignments, and she returned home on November 27, 2009. (Gladys Shelvy deposition, Exhibit F, p. 176.)

16. Scott Lewis, of USX's Workman's Compensation Department, received an email from Renee Litchfield, of USX's Risk Management Department, on the date of accident, November 21, 2009. The email stated SHELVY reported the incident and indicated she would not seeking medical attention. (Exhibit G.)

17. On November, 23, 2009, Lewis spoke with SHELVY, who told Lewis about the

incident and that her injuries did not affect her ability to perform her job duties. SHELVY was at work at this time. (Exhibit H.)

18. The following day, November 24, 2009, Lewis spoke with Walmart employee, Jeff Barker. Lewis's records do not indicate he told Barker that SHELVY intended to file a workers compensation claim, nor did Lewis tell Barker that SHELVY intended to make a claim against Walmart. (Scott Lewis deposition, Exhibit I, p. 44.

19. WALMART employee Jeff Barker arrived on the scene after the incident. Barker asked SHELVY if she was injured, and she responded she was "alright," she was just "upset". (Jeff Barker deposition, Exhibit J, p. 21.)

20. Barker reviewed the recording on a surveillance camera located on the southeast corner of the WALMART facility and testified that recording indicated SHELVY opened both doors of the trailer at the same time. (Id., p. 51.)

21. Barker did not preserve the recording because no injury was reported or visible. Barker, Exhibit J, p. 21-22.)

22. Lewis did not open up a claim number or a workmen's compensation file after speaking with SHELVY because the incident "was a report only," and, based on his understanding, SHELVY was not seeking medical attention. (Lewis, Exhibit I, p. 55.)

23. Defendant now moves for Summary Judgment as to Count I of Plaintiff's Second Amended Complaint, which alleges Defendant was negligent in loading the trailer. There is no material fact to suggest Defendant breached its duty to properly load the subject trailer.

II. **APPLICABLE LAW**

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has said that summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986)(quoting Fed. R. Civ. P. 56(c) (1987)). In deciding a motion for summary judgment, a court does not evaluate the weight of the evidence, judge the credibility of the witnesses, or determine the ultimate truth of the matter; instead, it is court's function to ascertain whether there exists a genuine issue of triable fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "A disputed fact is 'material' if it might affect the outcome of the suit under governing law." *Hampton v. Ford Motor Co.,* 561 F.3d 709, 713 (7th Cir. 2009). In determining whether a genuine issue of material fact exists, a court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Omnicare, Inc. v. United Health Group, Inc.,* 629 F.3d 697, 704 (7th Cir. 2011)("Even on summary judgment, district courts are not required to draw every requested inference; they must only draw reasonable ones that are supported by the record.")

The moving party has the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Wheeler v. Lawson,* 539 F.3d 629, 634 (7th Cir. 2008). The moving party "can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1183 (7th Cir. 1993) (citing *Celotex,* 477 U.S. at *325*); *Wheeler,* 539 F.3d 634 ("The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing 'that there is an absence of evidence to support the non-moving party's

case.'") (citing *Celotex,* 477 U.S. at 323). Once the moving party has met this burden, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 322 n.3 (quoting Fed. R. Civ. P. 56(e) (1987)); *Wheeler,* 539 F.3d at 634. "To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial." (citing *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). The non-moving party may not rely on mere conclusions or allegations to create a genuinely disputed issue of material fact. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 320 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 247 - 48), nor can mere speculation "be used to manufacture a genuine issue of fact." *Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008) (quoting *Amadio v. Ford Motor Co.,* 238 F.3d 919, 927 (7th Cir. 2001)). In order to defeat a motion for summary judgment, the nonmoving party "must make a showing sufficient to establish any essential element of [his] cause of action for which [he] will bear the burden of persuasion at trial." *Smith ex rel. Smith v. Severn,* 129 F.3d 419, 427 (7th Cir. 1997) (citing *Celotex Corp.,* 477 U.S. at 322). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The nonmoving party must show that there is evidence upon which a jury reasonably could find for [him]." *Wheeler,* 539 F.3d at 634 (internal citations omitted).

**III.   ARGUMENT**

    **A.   There is No Material Fact to Suggest Defendant Breached Its Duty to Load the Trailer Properly**

    *1.   Loads Shifting During Transit Is Typical and Not Evidence of Improper Loading*

In Count I, Plaintiff alleges: (a) failed to exercise ordinary care in loading the trailer; (b) failed to properly load boxes into the trailer; (c) failed to use straps to secure the loaded boxes in the trailer; (d) failed to warn Plaintiff of the hazardous, dangerous and unsafe condition inside the trailer when the Defendant knew, or should have known, of the unsafe condition; and (e) was otherwise negligent and/or careless in the maintenance of the premises. (Count I, par. 16.) In a diversity action, the substantive law of negligence of the state in which the injury occurred controls. *McEvers v. Missouri Pacific R.R. Co.*, 528 F.2d 220, 221 (7th Cir. 1975).

To sufficiently demonstrate negligence, a plaintiff must establish the existence of a duty owed by a defendant, a breach of that duty, and an injury proximately caused by that breach of duty. If a plaintiff fails to establish any element of the cause of action, summary judgment for a defendant is proper. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007). In this case, Plaintiff cannot demonstrate Defendant breached its duty to properly load the trailer. For that reason, this Court should grant Defendant's Motion for Summary Judgment as to Count I of the Second Amended Complaint because the material facts are not in dispute and are the following.

Charles Swayne was the WALMART employee assigned temporarily to load vehicles at the WALMART facility in Elwood, Illinois, for the two-week period proceeding the day after Thanksgiving (known in the retail trade as "Black Friday"). He was assigned to load trailer No. 800272. (Swayne deposition, p. 26.)

Swayne testified there was no problem loading the trailer. The trailer was delivered on November 10, 2011, and sealed the following day. If there had been a problem with loading, Swayne would have notified management and remedied the problem or reloaded the trailer. (Id., p. 38.) Following completion of loading, a "door runner" reviews the load to ensure it is stacked properly. (Id., pp. 39-40.) The trailer doors are then closed and sealed. WALMART employee

Steve Bearsly sealed the trailer. (Id., p. 40; Trailer Control Report, Exhibit K.)

Jeff Barker, the WALMART Manager in Iowa, arrived at the scene of the incident shortly after it occurred. After he arrived, he looked inside the trailer, which "looked like a nicely loaded truck." (Barker, p. 47.)

There is no evidence to contradict this testimony. Plaintiff instead argues that the mere fact that boxes fell out of the trailer indicates it was loaded improperly. But, that is not the case because the possibility that some boxes may fall when doors are open is a recognized hazard against which drivers are trained.[2]

Darlene Crabtree, USX's Director of Driver Safety and Compliance Training, testified that she was responsible for USX's Driver Orientation Program and Driver Finishing Program, which are designed to indoctrinate new and experienced over-the-road drivers hired by USX. (Darlene Crabtree deposition, Exhibit L, pp. 30-31.)

All hires undergo 150 hours of training, which consists of driving a tractor-trailer with a driver trainer" and a three-day orientation program. (Id., p. 40.) Assuming SHELVY was hired as a new driver in September 2008 and having no experience as an over-the-road driver, she would have received this training. (Id., p. 34.)

A driver trainee like SHELVY would have undergone instruction and training on the proper method for loading and unloading trailers. (Id., p. 49.) The substance of this training is included in a "driver handbook" given to SHELVY entitled "Loading and Unloading". The handbook contains particularized instruction on the dangers posed by cargo shifts during transport. New hires are told cargo loads can shift during transport. The specific instruction provided to SHELVY would have occurred during the second day of her training, between 1:15

---

[2] Indeed, any person who flies on a commercial airline is told on every flight to be careful when opening the overhead doors because the contents might have shifted over the course of the flight.

p.m. and 2:15 p.m.

Driver trainees are placed on notice that objects could fall when doors are opened on completion of a delivery. They are specifically instructed to use "extreme caution" when opening trailer doors. Trainees are told to "always use the door as a barrier when opening trailer doors in case freight has shifted." Moreover, trainees are told sharp turns or turns at elevated speeds can cause load shifts. This additional instruction is given to drivers by their dispatchers during a follow-up training session titled "Prevent Roll Over Accidents". According to records in Crabtree's possession, SHELVY completed this briefing with her dispatcher in March 2009. Lastly, in addition to the foregoing, trainees make deliveries with a driver trainer accompanying them. During this 150 hours of training, the trainee opens trailer doors under the guidance of the trainer, who provides input.

The thrust of all this instruction is to teach drivers how to open trailer doors because loads shifting during transit is a well-recognized hazard and is not, without more, evidence of negligence.

Defense expert Henry Tome issued a report and made certain conclusions. (Exhibit M.) He found that WALMART provides written procedures to their employees on the proper way to load trailers. Trailers are often loaded with boxes of various merchandise, and these boxes are loaded in a manner called "brick-layering." This method interlocks boxes to prevent them from falling while in transit. Heavier boxes are loaded on the bottom layers and lighter boxes loaded on the upper layers. (Swayne, p. 18; Tome, Exhibit M.)

Trailer No. 800272 was loaded with 1187 boxes with a total weight of 22,231 pounds (Exhibit K), which is very common. Based on all this information, Tome found no indication Trailer 800272 was loaded improperly.

Plaintiff has presented to evidence contradict the fact that there mere fact that a dozen boxes from a total of almost 1200 (which amounts to .01%) does not constitute a breach of duty. For that reason, Defendant is entitled to Summary Judgment.

### 2. *Plaintiff failed to Follow Proper Procedure*

The evidence also indicates Plaintiff caused her own injuries because she failed to follow proper procedure.

Dave Schroeder was the Assistant Manager at the receiving Walmart store in Cedar Rapids, Iowa, and he was an eyewitness. He testified he met SHELVY at the receiving door. He inquired into the type of trailer she was delivering, reviewed the paperwork to ensure everything was correct, verified that the seal on the trailer matched the paperwork and that the seal was unbroken.

Once Schroeder broke the seal, Schroeder told Shelvy to "drop" the trailer by the general merchandise side of the loading dock. (Schroeder, p. 43.) He reminded SHELVY the door had to be opened before backing the trailer into the dock. (Id., p. 44.) In his presence, SHELVY opened the right door first, then the left one, pulling both toward her. (Id., pp. 48-51.) She was standing in the middle of both doors when less than ten boxes fell on her. (Id., p. 57.)

SHELVY's actions did not follow the protocol given to her by USX, according to Darlene Crabtree, *supra*. Her testimony was corroborated by eyewitness Schroeder's account of the incident and by the findings of defense expert Tome.

In Tome's opinion, SHELVY was required to read and understand the Driver Handbook provided to her by USX. Section 6 of the Handbook states: (1) if a load is pre-loaded and pre-sealed, a driver is to confirm with the shipper that the load is secured properly and is to use extreme caution when opening the doors at the destination; and (2) a driver is always use a door

as a barrier when opening the trailer in case freight has shifted. These basic rules, especially applicable to a driver who did not load the trailer, have knowledge of what the trailer contained, or how it was loaded, were disregarded by SHELVY.

The proper way to open any trailer door is to: (1) open only the right door while standing to the left side of the door as it is being opened slowly; and (2) be ready to close the door if you see anything against the door. This is done so if any pieces of freight that are loose or disturbed during transit do not fall out of the trailer and strike the person opening the door. If SHELVY had followed the proper procedure given by USX, she would have prevented the accident.

Tome states that a professional driver, when shown which dock to back into, would have waited to open the trailer doors until she maneuvered the trailer into position in front of the dock. This is the reasonable standard of care within the trucking industry; however, SHELVY did not do this. Rather, she proceeded to open both trailer doors some distance from the dock, which showed either poor judgment or a lack of knowledge concerning the safe and proper method for delivering freight.

If SHELVY had read the handbook and followed its procedures, she would not have opened the trailer doors as she did. She unlatched both doors simultaneously and began to open the right side door to latch it open. As she opened the door, several boxes came out of the trailer. In her deposition, SHELVY stated she had no idea how to use a trailer door as a barrier. Her testimony was the following:

> Q. [By Mr. Golden]: The next bullet says: "Always use the doors as a barrier when opening trailer doors in case freight has shifted" Do you see that?
>
> A: Yes I do.
>
> Q: It tells you to use the door as a barrier against falling freight, right?

      A:      Yes.

      Q:      And how does a driver do that?

      A:      I have no idea, I have no idea.

(Shelvy, p. 219.)

Similarly, Schroeder watched SHELVY unlatch and open the doors on the trailer and testified: "She opens the doors, right one left one immediately after and pulls doors towards her." (Schroeder, p. 48.)

Lastly, the incident report written by SHELVY (Exhibit E) states that she "Opened trailer *doors,* plural.

For all these reasons, there is no evidence to suggest Defendant breached its duty to properly load the trailer. A mere .01% of boxes fell out of the trailer, and that was only after SHELVY apparently opened both doors. Even if she opened one door, as she says, that is no evidence of negligence because it is commonly known in the trucking industry that a load can shift during transit.

WHEREFORE, for all of the reasons stated above, this Court should grant Defendant's Motion for Summary Judgment on Count I of the Second Amended Complaint.

    **B.**    **There is No Material Fact to Establish a Duty to Preserve a Video Recording**

Count II alleges a cause of action for spoliation of evidence. Specifically, Plaintiff alleges: (a) Defendant maintained a videotaping system on the premises on the date of accident; (b) Defendant failed to retain the videotape after the accident; and (c) as a result of the videotape's being erased, Plaintiff is unable to prove her case-in-chief. See, Exhibit A.

Defendant is entitled to judgment on Count II because it had no duty to preserve the evidence under the holding of *Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 195, 652 N.E.2d 267

(1995); and the recording would not have shown the incident, so its existence or nonexistence is not material to Plaintiff's cause of action.

In *Boyd, supra*, the Illinois Supreme Court has established a two-prong test to be met in order to create a duty on the part of a defendant to preserve evidence. Generally, a defendant has no duty to preserve evidence unless certain facts are alleged to create an exception. Here, Plaintiff has presented no evidence to establish an exception, so WALMART had no duty to preserve the video recording. In addition, the record indicates the angle of the camera in relation to the vehicle would not have permitted recording of the incident. For these reasons, Defendant is entitled to summary judgment as to Count II.

### A.    *There is No Duty to Preserve Evidence*

Under Illinois law, a party has no duty to preserve evidence. *Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 195, 652 N.E.2d 267 (1995)(insurance carrier's loss of propane catalytic heater did not give rise to presumption that heater was defective or that loss deprived plaintiffs of suit against manufacturer). The Illinois Supreme Court formulated a two-prong test a plaintiff must meet in order to establish an exception, and a plaintiff must prove *both* prongs of the test. If a plaintiff fails to do so, defendant has no duty. *Dardeen v. Kuehling*, 213 Ill.2d at 329, 336 821 N.E.2d 227 (2004)(insurer had no duty to preserve sidewalk). Plaintiff has failed to present evidence to meet either prong of the *Boyd* test.

### B.    *Factors Needed to Create an Exception to the General Rule*

The first prong of the *Boyd* test is whether a "relationship" exists between the parties-- that is, whether there is an agreement, contract, statute, special circumstance or voluntary undertaking that gives rise to a duty to preserve evidence. The second prong is "foreseeability," where a plaintiff must show that a duty arises where a reasonable person in the "defendant's

position should have foreseen that the evidence was material to a potential civil action." *Boyd*, 166 Ill.2d 188, at 197, 652 N.E.2d 267 (1995).

*Boyd* was re-affirmed in *Martin v. Keeley & Sons, Inc.*, No. 2012 IL 113270 (Oct. 18, 2012) (employer/general contractor had no duty to preserve I-beam that caused injury). In *Martin*, the issue was whether a general contractor had a duty to preserve a concrete I-beam that was involved in an accident. The employer/general contractor, Keeley, destroyed the I-beam after the accident had been investigated by OSHA.

The trial court granted defendant's motion for summary judgment, finding defendant had no duty. The appellate court reversed (2011 IL App (5th) 100117), but the Supreme Court reinstated the judgment in favor of defendant. It held plaintiff failed to prove any "relationship" existed between the parties that would create a duty to preserve the I-beam. Defendant had not voluntarily assumed a duty to preserve the beam, there was no special circumstance giving rise to a duty, defendant's sole possession of the I-beam was insufficient to create a duty, and defendant's status as the employer created no a duty. *Martin, supra*, slip op. at 8-13.

The same reasoning applies here. Defendant WALMART did not volunteer to preserve the recording, there was no special circumstance creating a duty (that is, there is no applicable statute, contract or agreement to do so), the mere possession of the recording was insufficient to create a duty, and WALMART had no special "status" in relation to Plaintiff. In fact, there is no "relationship" such that an Illinois court would find a duty.

In sum, Plaintiff has no evidence to prove both prongs of the *Boyd* test. The record does not establish the "relationship" prong of *Boyd*; for that reason alone, Defendant is entitled to summary judgment as to Count II.

    **C.**     ***Plaintiff Fails to Allege the Exception Under* Boyd**

Another reason to grant Defendant's motion is that it was not "foreseeable" Plaintiff would be making a claim. Because there is no special circumstance (agreement, contract, statute or voluntary undertaking), the avenue remaining to Plaintiff is to establish "special circumstance." There is no evidence to prove this requirement.

The *Martin* court conceded there is no precise definition of "special circumstance;" however, the court discussed two cases (reaching different conclusions), to outline the factors that might set forth the requisite "special circumstance." These include: (a) where a plaintiff contacts a potential defendant; (b) asks the potential defendant to preserve the evidence; (c) defendant had the evidence; and (d) defendant segregated the evidence for plaintiff's benefit. See, *Martin*, at 10-11, *comparing Miller v. Gupta*, 174 Ill.2d 120, 672 N.E.2d 1229 (1996)(plaintiff given leave to re-plead to conform with Boyd), *with Dardeen v. Kuehling*, 213 Ill.2d at 329, 336 821 N.E.2d 227 (2004)(insurer had no duty to preserve sidewalk where plaintiff had not contacted defendant, had not asked that sidewalk be preserved, and had visited scene but had not taken photographs).

In this case, there is no evidence to prove Plaintiff "special circumstance." The evidence shows several days after the incident, Plaintiff told her USX worker's compensation employee Scott Lewis that she was not hurt and that she was able to continue working. An email received by Lewis on the date of accident stated SHELVY reported the incident and said she would not be seeking medical attention. There is no evidence that Lewis told WALMART employee Jeff Barker that Plaintiff would be making either a workers' compensation or third-party claim.

USX advised WALMART five days after the accident that Plaintiff was "fine." Moreover, WALMART received no notice of any claim or pending litigation until it served with process two years after the incident. WALMART Loss Prevention Manager Jeff Parker denied

16

that SHELVY told him of her intent to make a claim. He similarly denied WALMART was put on notice of the importance of the surveillance video on November 21, 2009.

USX Workers' Compensation Department representative Scott Lewis called SHELVY two days after the incident, at which time Shelvy told him that injuries she sustained did not affect her ability to perform her job duties. The following day, November 24, 2009, Lewis spoke with WALMART Asset Protection Coordinator, Jeff Barker. The record record has no evidence to suggest Lewis told Barker Plaintiff intended to make a claim. Lewis confirmed SHELVY was working at the time and on the day of their conversation. For all these reasons, WALMART had no ground in which to conclude the video recording was material to any potential claim.

In Count II, Plaintiff alleges the "foreseeability" prong of the *Boyd* test when she alleges Defendant "knew or reasonably shown have known that the videotaped footage * * * was material to a potential civil action." (Count II, par. 24.) There is no evidence to support this allegation, as noted above.

The mere fact Plaintiff was allegedly injured in an accident does not lead to the inference that a reasonable person should have known there would be a potential civil action. This is especially true in this case, where Plaintiff did not file suit until almost two years after the incident.

In addition, "foreseeability" requires that the missing evidence be *material* to the cause of action. Plaintiff has testified about the incident without the recording, and she alleges the recording would prove her testimony; however, the uncontested evidence is that would not have shown the incident. (Barker, pp. 60-64; Exhibit N).

Even under the best circumstances to Plaintiff, the videotape—whatever it would have showed--is not *material*. Its absence is not material to prove whether her allegations are more or

17

less true. *People v. Bobo,* 375 Ill. App.3d 966, 972, 874 N.E.2d 297, 305 (1st Dist. 2007)(evidence is relevant and admissible where it tends to prove a material fact and where probative value outweighs prejudicial effect). In this case, the absence of the videotape has no relevancy to the issue of whether Plaintiff can prove her case. She can put on her case without the videotape.

Moreover, Plaintiff alleges the proximate cause of the accident was that defendant failed to use ordinary care in securing the load. (Count I, par. 16.) There is no fact to indicate the erased videotape would have showed how the load was secured *inside* the container, so the presence or absence of the videotape is irrelevant. It would not be probative to the issue of how the load was secured prior to her opening the container.

What is material is evidence concerning how the load was secured, how the vehicle was driven, and how the door was opened. All of this evidence exists without the videotape; therefore, the videotape, even if it depicted what Plaintiff would want it to depict, is not material to her cause of action.

### III.  CONCLUSION

In sum, Defendant is entitled to judgment on Count I of the Second Amended Complaint because there is no material fact to suggest Defendant breached its duty to load the trailer properly. Defendant also is entitled to judgment on Count II because Plaintiff has not met the prongs of the Illinois Supreme Court test promulgated under *Boyd*; (b) the facts also are insufficient to establish Defendant should have foreseen the videotape would be material; and (c) Plaintiff has not shown the videotape is material to her cause of action.

WHEREFORE, Defendant, WAL-MART STORES EAST LP, incorrectly sued as Wal-Mart Stores, Inc., respectfully asks this Court grants its Motion for Summary Judgment as to Plaintiff's Second Amended Complaint in its entirety.

Respectfully submitted,

By: s/ Robert J. Golden
Robert J. Golden – Bar Number: 6193047
Michael G. Patrizio– Bar Number: 6188853
Dowd & Dowd, Ltd.
Attorney for Defendant
617 West Fulton Street
Chicago, Illinois 60661
Telephone: (312) 704-4400
Fax: (312) 704-45000
E-Mail: rgolden@dowdanddowd.com
E-Mail: mpatrizio@dowdanddowd.com

**CERTIFICATE OF SERVICE**

Under penalties as provided by law, the undersigned certifies that on May 1, 2015, she electronically filed Defendant's Motion for Summary Judgment using the CM/ECF system which sent notification of such filing to:

**Via Overnight Mail**

Gladys Shelvy
4615 South Prairie Street
Apt. 3
Chicago, Illinois 60653

**Via Email:**

Matthew J. Adair
Cooney & Conway
120 North LaSalle Street, Suite 3000
Chicago, Illinois 60602

Dowd & Dowd, Ltd.
617 West Fulton Street
Chicago, Illinois 60661
Telephone:   (312) 704-4400
Fax:         (312) 704-45000

Case: 1:11-cv-09176 Document #: 181 Filed: 05/01/15 Page 20 of 20 PageID #:926